IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH - CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MELYNDA JONELLE HAIRUP,<br><br>Defendant. | **MEMORANDUM OPINION AND ORDER**<br><br>Judge Dee Benson<br><br>Case No.: 2:07-CR-566 |

Before the Court is Defendant Melynda Jonelle Hairup's Motion to Dismiss Count 31 of the Indictment pursuant to Federal Rule of Criminal Procedure 12(b)(2) and DUCrimR12-1. Count 31 of the Indictment charges Defendant with aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1). Defendant argues that under no set of circumstances do her alleged acts satisfy the *mens rea* requirement of this statute and, therefore, this count should be dismissed.

**Background**

On August 29, 2007, Defendant was named in three counts of a thirty-three count indictment charging her and seven other defendants with crimes relating to bank fraud. Defendant's alleged involvement in this scheme was the negotiation of a false check. During the course of this negotiation, Defendant presented to the cashier at a Smith's Supermarket her own Utah identification card, which contained an accurate name and photo of Defendant but an altered identification number. In an effort to avoid detection, Defendant had altered the number on her identification card by changing a "3" in her identification number to an "8."

Unbeknownst to Defendant, this altered number happened to correspond to the Utah driver's license number of an actual person.

For negotiating a false check, the government charged Defendant with bank fraud under 18 U.S.C. §§ 2, 1344 and 1349.  In addition, for Defendant's alteration of her Utah identification card number in connection with passing the false check, the government charged Defendant with aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1).  This statute imposes a mandatory two-year term of imprisonment that must be served in addition to any other term of imprisonment imposed for committing the underlying act of bank fraud.  *See* 18 U.S.C. §§ 1028A(a)(1) and (b)(2).

Defendant argues that because she did not knowingly possess, transfer, or use the identification documents of another, but merely altered the number on her own Utah identification card, her act does not satisfy the *mens rea* requirement of the aggravated identity theft statute.  Accordingly, Defendant contends that Count 31 of the Indictment should be dismissed.

**Analysis**

18 U.S.C. § 1028A(a)(1) provides:

> Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

The government argues that the word "knowingly" in this statute extends only to the transfer, possession or use of a false identification, and not to the fact that the means of identification actually belonged to another person.  Defendant contends, however, that to be guilty of the statute one must knowingly use an identification document knowing that it belongs

to another.  This case, therefore, presents an interesting issue of statutory interpretation, namely, what does the word "knowingly" in § 1028A(a)(1) modify.

**I.      The Plain Meaning of the Statute**

When construing a statute, courts "must presume that a legislature says in a statute what it means and means in a statute what it says."  *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992).  The difficulty with this case, however, is that the meaning of what the statute says is not readily apparent.  An initial reading of § 1028A would seem to suggest that the word "knowingly" modifies the entire indivisible predicate in front of which it is placed.  There is no syntactical signal that separates the first part of the predicate – "transfers, possesses, or uses" – from the second part of the predicate – "without lawful authority, a means of identification of another person."  Under this interpretation of the plain language of § 1028A the word "knowingly" modifies the entire predicate: "transfers, possesses, or uses, without lawful authority, a means of identification of another person."  At least two United States District Court decisions have reached this conclusion.  *See United States v. Salazar-Montero*, 2007 U.S. Dist. LEXIS 79011, at *31 (N.D. Iowa, Oct. 25, 2007); *see also United States v. Beachem*, 399 F. Supp. 2d 1156 (W.D. Wash. 2005) (holding that the word "knowingly" in § 1028A modified the phrase "means of identification of another person" such that the statute required knowledge that the means of identification did in fact belong to another).

A different interpretation, and the government's position here, is supported by its own line of cases.[1]  These courts have found, through a detailed analysis of the rules of grammar, that

---

[1] *See, e.g., United States v. Hurtado*, 2007 WL 4125820 (11th Cir. Nov. 21, 2007); *United States v. Montejo*, 442 F.3d 213 (4th Cir. 2006) ("*Montejo II*"), *cert. denied*, 127 S. Ct. 366 (2006) (Mem.); *United States v. Chavez-Quintana*, 2007 WL 3171795 (D. Kan. Oct. 25, 2007)

the word "knowingly" as used in § 1028A only modifies "transfers, possesses, or uses," and does not extend to "a means of identification of another person." For example, in *United States v. Montejo*, 442 F.3d 213 (4th Cir. 2006), a case on which the government heavily relies, the court stated:

> The word "knowingly" in this case is an adverb that modifies the verbs "transfers, possesses, [and] uses." "Without lawful authority" is an adverbial phrase that also modifies these verbs. The direct object of these transitive verbs is "a means of identification," a nominal phrase that is further modified by the adjectival prepositional phrase "of another person." Together, "transfers, possesses, or uses . . . a means of identification of another person" forms a predicate.

*Id.* at 215.

Of these two competing interpretations, it appears to this Court that the better reasoning has "knowingly" modifying the entirety of the clause. First, as explained above, the word "'knowingly' has been placed as close as possible to the entire, indivisible predicate: 'transfers, possesses, or uses, without lawful authority, a means of identification of another person.'" *Salazar-Montero*, 2007 U.S. Dist. LEXIS 79011, at *31 (N.D. Iowa, Oct. 25, 2007). Second, rules of grammar are malleable, allowing both parties to point to rules of grammar in support of their position. For example, Defendant cites the *Chicago Manual of Style*, §§ 5.167 and 5.168 (15th ed. 2003), to point out that the placement in the statute of the prepositional phrase "of another person" following the object "a means of identification" expresses the intent to modify "all the elements in the compound sentence," including the word "knowingly." *Id.* at § 5.168.

---

(Slip Op.); *United States v. Garcia-Xcluha*, 2007 WL 2710801 (N.D. Iowa Sept. 13, 2007); *United States v. Godin*, 489 F. Supp. 2d 118 (D. Maine 2007) (*"Godin II"*); *United States v. Contreras-Macedas*, 437 F. Supp. 2d 69 (D.D.C. 2006); *United States v. Crounsset*, 403 F. Supp. 2d 475 (E.D. Va. 2005); *United States v. Montejo*, 353 F. Supp. 2d 643 (E.D. Va. 2005) ("*Montejo I*").

The confusion resulting from reliance on highly technical grammar rules is further evidenced by *United States v. Godin*, 489 F. Supp. 2d 118 (D. Maine 2007), another case the government cites in support of its position. *Godin* noted that "although the holdings in the *Montejo* line of cases is that 'knowingly' only modifies 'transfers, possesses, or uses,' the language and rationale from these cases strongly suggest that the defendant must *know* that he or she was using a *means of identification without lawful authority* to be convicted under section 1028A." *Id*. at 120 (emphasis in the original).[2]  Therefore, while technically following the reasoning of *Montejo*, *Godin* reasoned that "[t]he word 'knowingly' must modify not just the verb, but also at least the object that immediately follows the verb, namely, 'a means of identification.'" *Id*. at 120 n.1.  In other words, *Godin* held that "knowingly" not only modifies "transfers, possesses, or uses," but also modifies "without lawful authority, a means of identification," stopping, however, at "of another person." *Id.* at 120.

This interpretation seems wrong.  There is absolutely no grammatical signal to separate the object "a means of identification" from the prepositional phrase "of another person."  To hold, therefore, that "knowingly" modifies one and not the other eviscerates the plain meaning of

---

[2]In support of this position, *Godin* explains:

> If during a bank fraud conspiracy, I hand a defendant a sealed envelope asking her to transfer it and its contents to another and she knowingly does so, she has knowingly transferred the envelope and its contents.  But if she believes my statement that the envelope contains only a birthday card when in fact it contains a forged social security card, the government surely would not contend that she should receive the enhanced penalty.  The word "knowingly" must modify not just the verb, but also at least the object that immediately follows the verb, namely, "a means of identification."

*Godin*, 489 F. Supp. 2d at 120 n.1.

5

the sentence and the statute. The same can be said of the interpretations applied by *Montejo* and its progeny. When one simply engages in a plain reading of the statute, instead of a hyper-technical grammatical analysis, it seems that the word "knowingly" as used in § 1028A(a)(1) modifies the entire indivisible predicate: "transfers, possesses, or uses, without lawful authority, a means of identification of another person."

**II.     Legislative History**

This interpretation is further supported by the legislative history of § 1028A. To the extent the word "knowingly" is capable of more than one meaning, it is appropriate to consult the legislative history in an attempt to determine Congressional intent. *See U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield*, 472 F.3d 702, 710 (10th Cir. 2006). As its title, "Aggravated Identity Theft," plainly suggests, the statute was intended to combat identity theft and the use of stolen identification documents: "The terms 'identity theft' and 'identity fraud' refer to all types of crimes in which someone *wrongfully obtains* and uses another person's personal data . . . ." H.R. Rep. 108-528 at 4 (2004), *reprinted in* 2004 U.S.C.C.A.N. 779, 780 (emphasis added).

In explaining the need for this statute, Congress used several examples which emphasize the type of conduct this statute was meant to punish. These examples include: a man who used the Social Security number of another to obtain loans and a line of credit; a person who used a stolen identity to apply for Social Security benefits; and a Mexican citizen who received benefits using the Social Security number of his former brother-in-law. *Id.* at 5-6. In all of the examples provided by Congress, the offender knew that the means of identification being used to facilitate

the crime was that of another person, and not his/her own.[3]  This further evidences Congressional intent that the enhanced penalties of § 1028A should only apply when a person knowingly uses the identity of another during the commission of a serious crime.

Although the government also cites to legislative history in support of its position, it fails to provide a single substantive example in its favor from the legislative history of § 1028A. Instead the government relies on the legislative history of § 1028 – not the legislative history of § 1028A – to argue broadly that by passing these identity theft statutes Congress intended to expand the government's ability to prosecute individuals who possessed illegal identification documents while committing certain crimes.  It is clear that §§ 1028 and 1028A were enacted to make it easier for prosecutors to convict identity thieves.  *See id*. at 10.  What is not as clear is whether the defendant, in order to be found guilty, must know that the identification documents he possesses belong to another person.  None of the legislative history cited by the government informs this specific question.

Accordingly, with no evidence to the contrary and substantial evidence in support, the Court finds that the legislative history of § 1028A reinforces its interpretation that the word "knowingly" modifies the entire indivisible predicate: "transfers, possesses, or uses, without lawful authority, a means of identification of another person."

---

[3]The legislative history clearly identifies the class of people to whom the statute is intended to apply, of which Defendant does not belong.  Defendant was not pretending to be another person.  Rather, Defendant presented to the cashier her own identification card.  It was by pure chance that the altered identification number corresponded to a driver's license number of an actual person.  Accordingly, Defendant took no action that would constitute knowing theft of another person's identity.

**III.    Rule of Lenity**

The foregoing analysis demonstrates that the exact meaning of § 1028A(a)(1) is at best ambiguous. The language at issue is undeniably subject to two interpretations. And when this is the case, our tradition of fair play and justice has always favored the interpretation in favor of the accused. *See Adamo Wrecking Co. v. United States*, 434 U.S. 275, 285 (1978) ("where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant.") (quoting *United States v. Bass*, 404 U.S. 336, 348 (1971)). "This policy embodies the instinctive distastes against men languishing in prison unless the lawmaker has clearly said they should," *Bass*, 404 U.S. at 348 (quotations omitted), and is especially applicable in this case, where the criminal penalty is severe.

It is well to remember the statutory framework involved in this case. The first requirement is that the defendant commit an act of bank fraud, which in this case consisted of passing a bad check (drawn on a fictitious account) at a supermarket. Section 1028A only comes into play if during the commission of that crime the defendant uses another person's identity. If so, an extra two years in prison is added as a mandatory supplement to the sentence imposed for the bank fraud. By any measurement, this is a harsh penalty, one Congress felt so strongly about that it removed all discretion from the sentencing judge.

Given the legislative history's repeated references to the concern for the growing number of intentional identity thefts caused in large part by modern technology, this kind of mandatory additional punishment is understandable. And in those cases of actual intended theft of another's identity, the punishment seems to fit the concern. A criminal receives an extra two years in prison if when committing a crime he steals someone else's identity. But if Congress intended to

impose such a serious remedy on those who inadvertently or unknowingly implicate another person's identity in connection with a relatively minor act of passing a bad check, Congress could, and should, have clearly said so.  It is one thing to send a person to prison for an extra two years for intentionally using another person's identity while passing a fraudulent check and another to subject a person to the same punishment where there was no such intent.

      The facts of this case, while not controlling on the statutory interpretation issue, nevertheless illustrate the point.  Here, in facts the government agrees are true for purposes of the present motion, the Defendant's act of altering her own identification number on her own identification card with her own picture on it, was intended only to make it more difficult for the authorities to catch her for passing a fraudulent $50.00 check.  She had no intent to implicate another person, indeed she had no idea that the altered number on her state identification card, which is not a particularly common form of identification, would correspond to a number on a driver's license, a totally different form of identification, which happens to also use six digits, of another person.  Her act was clearly associated with her criminal act of bank fraud, for which she faces punishment, which, depending on her criminal history and other factors, may mean significant time in prison.  To add to that a two year additional mandatory prison term because the number happened to correspond to another person's identity where she had *no* intention to go beyond bank fraud and enter into the realm of "aggravated identity theft" seems unduly harsh.  Of course, if that is what Congress intended they could easily say so and the public would be on fair notice.

      Accordingly, "[e]ven if the reader does not consider the issue to be as clear as [the Court], he must at least acknowledge . . . that it is eminently debatable – and that is enough,

under the rule of lenity, to find for the [Defendant] here." *Smith v. United States*, 508 U.S. 223, 246 (1993) (Scalia, J., dissenting).

## Conclusion

The Court finds that the word "knowingly," as used in § 1028A(a)(1), modifies the entire indivisible predicate: "transfers, possesses, or uses, without lawful authority, a means of identification of another person." This interpretation is supported by the plain meaning of the words of the statute, to the extent it should be consulted, the legislative history, and the rule of lenity. To be guilty under this statute one must knowingly use the identity of another to facilitate a serious crime, which according to the parties' stipulation, the Defendant did not do. Defendant was not intending to masquerade as another person or even to use another person's identity. Rather, Defendant presented to the cashier her own identification card, and had no intent to use the identification documents of another. Accordingly, Defendant's motion to dismiss Count 31 of the Indictment is GRANTED.

**IT IS SO ORDERED.**

DATED this 19th day of February, 2008.

_____
Dee Benson
United States District Judge